BRUCKNER, Personal Representative of Estate of John L. Bruckner, Deceased, Plaintiff-Respondent, V. PRAIRIE FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant and Third-Party Plaintiff: BRUCKNER, Third-Party Defendant-Appellant.

*No. 75-692. Submitted on briefs November 2, 1977.—Decided December 13, 1977.*
(Also reported in 260 N.W.2d 256.)

For the appellant the cause was submitted on the brief of *Paul F. Angel,* and *Morrow, Pope & Angel* of Dodgeville, and *R. J. Satter* of Prairie du Chien.

For the respondent the cause was submitted on the brief of *Morse, Morse & Roggensack* of Lancaster.

HEFFERNAN, J. The questions presented are whether a "payable on death" savings account is permissible in a federal savings and loan association and, if it is, whether there is sufficient evidence to show that the decedent, John L. Bruckner, created a savings account with the Prairie du Chien Federal Savings and Loan Association payable on his death to Lee J. Bruckner, a nephew.

We conclude that, as a matter of state law, an account "payable on death" to designated beneficiaries is permissible in a federal savings and loan association, but we also conclude that there is insufficient evidence to show that John L. Bruckner created such an account payable upon his death to Lee J. Bruckner or that he intended to create such account. Accordingly, we affirm the trial court judgment, which directed that the proceeds of the account be paid to Richard A. Bruckner as personal representative of the estate of John L. Bruckner.

The admitted facts show that John L. Bruckner, who died on July 8, 1974, opened a savings account, in his own name only, on November 9, 1959, at the savings and loan association. On that latter date, he executed a signature card, and he received a passbook. On the same date, the association opened a ledger card, which thereafter purported to reflect deposits and withdrawals in respect to John L. Bruckner's account. It is undisputed

that, at the time the account was opened, only John L. Bruckner was referred to on the association's records.

Upon the death of John L. Bruckner in 1974, Richard A. Bruckner, as personal representative, presented the passbook to the association and asked that the amount on deposit (in excess of $18,000) be delivered to him for inclusion in the estate assets.

The association refused to turn over the assets, because of an entry on the signature card which recited "POD to Lee J. Bruckner." The same entry appears on the second of three pages of the association's ledger card in respect to the Bruckner account.

When the association refused to turn over the money to the personal representative, he commenced this action against the savings and loan association, asserting that POD accounts were not permissible in federal savings and loan associations and, in addition, that the evidence was insufficient to show that John L. Bruckner had set up an account payable on his death to Lee J. Bruckner. Lee J. Bruckner was joined as a third-party defendant.

The evidence at trial showed that initially the signature card and the ledger card did not include a POD entry. No association employee had any recollection when the POD entries were made on the signature and ledger cards. It was shown, however, that the typed addition to the cards was made by a typewriter which was not acquired by the savings and loan association until 1966.

Each year the savings and loan association, for tax purposes, sent its members federal interest report forms 1099. Copies of these forms were placed in evidence at trial. Only for the two years, 1969 and 1973, did the forms refer to the account as a POD account.

Because the typewriter used to make the signature and ledger card entries was acquired in 1966 and the

earliest date that there was reference to the POD nature of the account in the 1099 forms was 1969, it is reasonable to assume that the entry was made on the cards sometime between 1966 and 1969.

There was no evidence to show that John L. Bruckner had ever requested or applied for a POD account, and no employee of the association had any recollection of making the POD entries on the cards.

Because the origin of the POD card entries could not be demonstrated, the trial judge ruled that the cards were not admissible to show the POD entries. Such entries, he held, were not authenticated, but the cards, exclusive of the POD reference, were admissible for the limited purpose of showing the creation of the account and the ensuing ledger entries only. Objection had been made by the plaintiff to the POD portion of the entry under sec. 909.01, Stats.,[1] which requires that evidence be identified or authenticated as a precondition to admissibility.

Because there was, therefore, no evidence admitted which showed that an account payable on death to Lee J. Bruckner was ever created, the trial judge held that the proceeds of the account were properly payable to the personal representative of John L. Bruckner and ordered the claim of Lee J. Bruckner dismissed.

This appeal could be disposed of on an evidentiary basis only, *i.e.*, assuming the propriety of establishing a POD account in a federal savings and loan association, there was no evidence to show that John L. Bruckner had created or attempted to create a POD account.

Both parties, however, have extensively briefed the question of whether POD accounts are permitted in federal savings and loan associations doing business in

---

[1] "909.01 General provision. The requirements of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Wisconsin. The appellant, Lee J. Bruckner, contends they are permitted; and the respondent, personal representative, contends they are not. Were we to conclude as a matter of law that POD accounts are impermissible, the question whether from an evidentiary viewpoint John L. Bruckner intended to create a POD account or followed the procedure necessary to create one, if permissible, would be irrelevant.

We, accordingly, address ourselves to the permissibility of creating POD accounts in federal savings and loan associations in Wisconsin.

While, at one time, accounts payable on death were held void in Wisconsin because, under the rationale of *Tucker v. Simrow*, 248 Wis. 143, 21 N.W.2d 252 (1946), they sought to make a testamentary disposition without complying with the statute of wills, POD accounts were specifically permitted after the passage of sec. 215.14 (2), Stats., in 1951. That renumbered statute applicable to this case provides:

"215.14(13) Accounts Payable to Another Person Upon Death. Savings accounts may be issued to a member payable upon death to another person. Upon the death of the member such other named person shall become the owner thereof, and the payment of the withdrawal value of the savings accounts to such person shall be made under s. 72.29, but no new owner shall have right superior or prior to the rights of the deceased member. Such savings accounts shall be considered a part of the deceased member's estate and subject to the payment of his just debts." (Stats. 1973)

From the effective date of that statute POD accounts were permissible for state savings institutions *(Estate of Fucela*, 26 Wis.2d 476, 132 N.W.2d 553 (1965)), but were they also thereafter permissible in federal savings and loan associations doing business in Wisconsin? We conclude that they were.

The parties agree that no federal statutes or regulations prohibit or authorize POD accounts. Our inde-

pendent investigation corroborates the research of the parties. The federal law is silent on the subject of POD accounts.

In *Kaski v. First Federal Savings & Loan Association of Madison,* 72 Wis.2d 132, 240 N.W.2d 367 (1976), we indicated that, in respect to the regulation of lending practices of federal savings and loan associations, the federal law was pervasive and preempted any state regulation in the field. We clearly implied, however, that federal savings and loan associations were subject to state laws in some respects. *Kaski, supra,* at 141. We said therein, quoting *Pearson v. First Federal Savings & Loan Asso.* (Fla. App. 1963), 149 So.2d 891, 894–95:

" 'It is a well-established rule that federal savings and loan associations are subject only to state law which does not interfere with the purposes for which it was created, does not destroy its efficiency, and does not conflict with paramount federal law.' "

In the context of this case we are not concerned with any state regulatory power that conflicts with federal legislation. Our question here is solely one of state laws —by what means, other than by will, can property be passed to another upon the death of the owner.

The federal law, while demonstrating an interest in the taxability of such transfers, has never sought to limit the methods of testamentary transfers in respect to federally franchised institutions or otherwise.

While the federal law is silent in respect to POD accounts, the State of Wisconsin by sec. 215.14(13), Stats., in effect at the time it is alleged the POD account was created, has announced that POD accounts are not contrary to Wisconsin public policy and are permitted by Wisconsin law.

Although the state law does not purport to regulate the lending practices of federal savings and loan associations, it does recognize property interests that may

be created or transferred by federal savings and loan associations. The creation and transfer of these interests are regulated by state law. The federal government has no concern with these matters.

We accordingly conclude that federal savings and loan associations doing business in Wisconsin may issue accounts to a member with the provision that, upon the death of the association member, the proceeds of the account will be payable to a named beneficiary.

Did John L. Bruckner provide for such an account? There is no admissible evidence which shows that he did.

The account, as he opened it, was in his name only. No employee of the savings and loan association was able to testify that John L. Bruckner had asked that the account be made payable on death. No employee could, or did, testify that in the usual course of business the entry, "POD to Lee J. Bruckner" on the signature and ledger cards would not have been made but at the request of the account owner.

The only shred of evidence, if admissible, connecting John L. Bruckner's account with the proviso that Lee J. Bruckner was to be the beneficiary on John's death was the entry on the cards. But this entry can have no meaning, for there is nothing to show that John L. Bruckner had anything to do with it.

The Code of Evidence provides:

"909.01 General provision. The requirements of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

The notes of the Judicial Council Committee accompanying this provision state:

"Authentication or identification is a special aspect of relevancy. It is preliminary and precedent to a question of admissibility." 59 Wis.2d R329 (1974).

The trial judge refused to allow into evidence the portion of the cards bearing the typed words, "POD to Lee J. Bruckner," stating, "There was no evidence as to whether or not Mr. Bruckner was ever present when this was done or who did it for him." He stated that these entries, not having been authenticated, did "not . . . . merit any legal consequence whatever."

We conclude that the trial judge correctly rejected the POD entry on the cards. If it had been shown that the entry had been made at the request of the account owner, and if an employee were able to testify that the entry was made in response to such request, the entry, "POD to Lee J. Bruckner," would be admissible. Such evidence was totally lacking. The entry was irrelevant to the proceeding because it could not be shown that it was an expression of the account owner's intent and not that of a third person. Without this evidence, there was nothing to show that a POD account was intended. The court properly held that the admissible evidence proved only that John L. Bruckner had opened a savings account in his own name and had not altered that account. Accordingly, upon his death, the deposits to the account were payable to his estate.

Sec. 215.14(13), Stats., applicable to this action, was repealed in 1973. In its place was created a comprehensive statute, ch. 705, detailing the procedures to be employed in creating multiple party and agency accounts, including accounts payable on death. It provides in sec. 705.02(3) that, even where the statutory procedures and forms are not followed, a deposit to an account "shall nonetheless be deemed to create . . . a . . . P.O.D. relationship . . . in accordance with what-

ever *competent* evidence is available concerning the depositor's intent." (Emphasis supplied.)

This portion of the 1973 act makes explicit that no special forms or procedures are required to create a POD account. All that is needed is competent evidence of the account owner's intent to create the POD relationship. We deem this to be a restatement of the common law as it existed prior to the 1973 revision and applicable to the facts under consideration on this appeal.

In the context of John L. Bruckner's account, no special procedures or forms would have been necessary to create an account payable on death to Lee J. Bruckner, but some competent evidence was necessary to demonstrate that such disposition of the account balance was intended by the depositor. In this case, no evidence was produced that tended to show any intent by John L. Bruckner to make the account payable upon his death to Lee J. Bruckner.

*By the Court.*—Judgment affirmed.